**Marcial Montilla BERNAL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 99–71315.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 2001.

Decided Aug. 15, 2001.

Before WARDLAW, PAEZ, and TALLMAN, Circuit Judges.

## MEMORANDUM *

Petitioner Marcial Montilla Bernal petitions for review of a decision of the Board of Immigration Appeals (BIA), affirming the denial by the immigration judge (IJ) of his applications for suspension of deportation and for voluntary departure. We deny the petition.

In November 1990, the Immigration and Naturalization Service issued an Order to Show Cause charging Bernal with deportability. In 1991, Bernal filed applications for suspension of deportation and for voluntary departure. In 1992, the IJ found him deportable. The IJ also found that, in February 1990, and again in June 1990, Bernal had made material, false representations about his marital status while applying for a visa, a finding Bernal does not challenge here. On the basis of these recent false representations, the IJ found that Bernal could not establish the requisite years of demonstrated moral character to be eligible either for suspension of deportation or for voluntary departure. On June 19, 1992, Bernal appealed to the BIA. Seven years later, in 1999, the BIA affirmed the IJ's ruling.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

In his petition for review, Bernal contends he should be able to count the years that his appeal was pending before the BIA towards the moral character requirements for suspension of deportation and voluntary departure. Because the INS initiated deportation proceedings against Bernal prior to April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), and a final deportation order was filed after that date, IIRIRA's transitional rules govern this case. *See* IIRIRA, Pub.L. No. 104–208, § 309(a), 110 Stat. 3009, 3009–625 (1996); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). "We review *de novo* purely legal questions regarding the requirements of the Immigration and Nationality Act, ... although the BIA's interpretation of the meaning of the statute is entitled to ... deference according to the rules of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." *Ladha v. INS*, 215 F.3d 889, 896 (9th Cir.2000) (internal citation omitted).

### 1. *Failure to exhaust remedies*

As an initial matter, Bernal did not argue before the BIA that the time that his appeal was pending should be counted towards the moral character requirements for suspension of deportation and voluntary departure. The INS therefore contends that Bernal failed to exhaust his remedies on this issue.

Ordinarily "[f]ailure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter," *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994) (internal quotation and citation omitted); however, we may consider issues which a party has failed to exhaust if "the issue presented is purely one of law and

the opposing party will suffer no prejudice," *Aronson v. Resolution Trust Corporation*, 38 F.3d 1110, 1114 (9th Cir.1994) (citation omitted). This is particularly appropriate, where, as here, the dictates of the law are clear. *Id.* Because the INS has identified no prejudice, we address the pure legal question presented by Bernal.

### 2. *Eligibility for suspension of deportation*

Turning to the merits, IIRIRA's "stop time" rule applies to Bernal's application for suspension of deportation. INA § 240A(d)(1) (stop time rule); IIRIRA § 309(c)(5) (applying stop time rule to transitional rule petitioners); *Ram v. INS*, 243 F.3d 510, 514 (9th Cir.2001) ("the stop-time rule applies to suspension of deportation cases heard by an IJ *or on appeal* after IIRIRA took effect") (emphasis added). Pursuant to the stop time rule, the Order to Show Cause that issued in November 1990 "stopped" Bernal's ability to accumulate any additional period of demonstrated moral character. His argument that he could continue to accumulate years of demonstrated moral character during the pendency of the BIA appeal, after he was served with an Order to Show Cause, is foreclosed by the stop time rule. Consequently, he could not accumulate the requisite seven years of good moral character that he needed to be eligible for suspension of deportation. *See* 8 U.S.C. § 1254(a)(1)(1994).

### 3. *Eligibility for voluntary departure*

The stop time rule does not apply to Bernal's application for voluntary departure. The stop-time rule only "stops" "any period of continuous residence or continuous physical presence in the United States." INA § 240A(d)(1). And the "moral character" requirement that Bernal was required to meet in order to be eligible for voluntary departure does not in-

clude any residency or physical presence requirement. *See* 8 U.S.C. § 1254(e)(1)(1994). The moral character requirement for voluntary departure is met if an applicant demonstrates that he "has been[ ] a person of good moral character for at least five years." *Id.*

But the only consequence of the inapplicability of the stop time rule is that we must consider Bernal's eligibility for voluntary departure under the pre-IIRIRA rules for voluntary departure that were applied by the IJ. Under those rules, Bernal had to show that he had been a person of good moral character for at least five years "immediately preceding his application for voluntary departure." *Id.* Bernal's argument that he could continue to accumulate years of demonstrated moral character during the pendency of the BIA appeal, after he had filed his application for voluntary departure, is directly contrary to the clear text of the statute.

**PETITION DENIED.**